**No. 25-5503**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GUARDANT HEALTH, INC.,

*Plaintiff-Appellee*,

*v.*

NATERA, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California, No. 3:21-CV-04062 (Chen, J.)

## REPLY BRIEF FOR APPELLANT

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real Suite 400
Palo Alto, CA 94306
(650) 858-6000

SETH P. WAXMAN
JOHN HE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
(202) 663-6000

MICHAEL J. SUMMERSGILL
ADELA LILOLLARI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

May 11, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 4

I.    THE APPLES-TO-ORANGES INSTRUCTION WAS BOTH ERRONEOUS AND
PREJUDICIAL ............................................................................................ 4

    A.    The Apples-To-Oranges Instruction Misstated The Law ..................... 4

    B.    The Instruction Was Prejudicial ...................................................... 9

II.    THE DISTRICT COURT ERRED IN APPLYING THE SECOND CIRCUIT'S
*ONY* RULE ............................................................................................ 13

    A.    This Court Should Not Adopt The *ONY* Rule ................................. 13

    B.    A New Trial Is Required On Natera's Counterclaims ....................... 17

    C.    If The Court Adopts *ONY*, It Should Also Apply to Natera's
Advertisements ............................................................................ 18

III.    THE DISTRICT COURT ERRED IN PERMITTING GUARDANT'S EXPERT TO
APPLY A 3X MULTIPLIER WHEN ASSESSING COMPENSATORY
DAMAGES .............................................................................................. 19

IV.    THE DISTRICT COURT ERRED IN ALLOWING PUNITIVE DAMAGES ................. 22

    A.    The Court Erred By Allowing Punitive Damages To Go To The
Jury .......................................................................................... 22

        1.    California Common Law Does Not Create a Loophole to
the Lanham Act's Prohibition on Punitive Damages ............... 22

        2.    The Court Did Not Abuse Its Discretion by Declining to
Invoke Judicial Estoppel ...................................................... 27

    B.    The $175.5 Million Award Cannot Stand ......................................... 29

        1.    No Reasonable Jury Could Have Found the Kind of
"Despicable" Behavior Required at the Threshold ................... 29

        2.    The $175.5 Million Award Violates Due Process .................... 30

CONCLUSION ................................................................................................. 31

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) ..........................................25

*Aetna Casualty & Surety Company v. Centennial Insurance Company*, 838 F.2d 346 (9th Cir. 1988) ...................................................................24

*American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902)...............................................................................14

*Andrade v. City of Phoenix*, 692 F.2d 557 (9th Cir. 1982) ...................................................................26

*Ariix, LLC v. NutriSearch Corporation*, 985 F.3d 1107 (9th Cir. 2021) ....................................................................17

*Bakemark USA, LLC, v. Navarro*, 2023 WL 3317001 (C.D. Cal. Apr. 28, 2023)...............................................25

*Balboa Insurance Company v. Trans Global Equities*, 218 Cal.App.3d 1327 (1990) .....................................................................27

*Bank of the West v. Superior Court*, 833 P.2d 545 (Cal. 1992)........................................................22, 23, 26

*Barnes-Hind, Inc. v. Superior Court*, 181 Cal.App.3d 377 (1986) .........................................................................24

*BladeRoom Group Limited v. Emerson Electric Company*, 20 F.4th 1231 (9th Cir. 2021) ....................................................................18

*CareDx, Inc. v. Natera, Inc.*, 2025 WL 2480117 (3d Cir. Aug. 28, 2025) ...................................................7

*CareDx, Inc. v. Natera, Inc.*, 2019 WL 7037799 (D. Del. Dec. 20, 2019) .................................................14

*City of Long Beach v. Standard Oil Company*, 46 F.3d 929 (9th Cir. 1995) .................................................................5, 10

*City of Pomona v. SQM North America Corporation*,
866 F.3d 1060 (9th Cir. 2017) ...............................................................20

*Cleary v. News Corporation*,
30 F.3d 1255 (9th Cir. 1994) .................................................................24

*Dyson, Inc. v. Garry Vacuum, LLC*,
2010 WL 11595882 (C.D. Cal. July 19, 2010) .............................................25

*Eastman Chemical Company v. Plastipure, Inc.*,
775 F.3d 230 (5th Cir. 2014) ...........................................................13, 14, 15

*Enquist v. Oregon Department of Agriculture*,
478 F.3d 985 (9th Cir. 2007) .................................................................27

*Groupion, LLC v. Groupon, Inc.*,
859 F.Supp.2d 1067 (N.D. Cal. 2012)...........................................................25

*HipSaver Inc. v. Kiel*,
984 N.E.2d 755 (Mass. 2013)..................................................................14

*In re First Alliance Mortgage Company*,
471 F.3d 977 (9th Cir. 2006) .................................................................29

*InSinkErator, LLC v. Joneca Company*,
163 F.4th 608 (9th Cir. 2025) ..................................................................6

*Leatherman Tool Group, Inc. v. Cooper Industries, Inc.*,
285 F.3d 1146 (9th Cir. 2002) ................................................................30

*Los Defensores, Inc. v. Gomez*,
223 Cal.App.4th 377 (2014) ...............................................................26, 27

*Meta-Film Associates, Inc. v. MCA, Inc.*,
586 F.Supp.1346 (C.D. Cal. 1984)...........................................................25

*Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) .................................................................28

*Ojala v. Bohlin*,
178 Cal.App.2d 292 (1960) ................................................................23, 24

*ONY, Inc. v. Cornerstone Therapeutics, Inc.,*
    720 F.3d 490 (2d Cir. 2013) ................................................................3

*Pacira Biosciences, Inc. v. American Society of Anesthesiologists, Inc.,*
    63 F.4th 240 (3d Cir. 2023)........................................................... 14, 16

*Perez v. Discover Bank,*
    74 F.4th 1003 (9th Cir. 2023) ..........................................................28

*Rise Basketball Skill Development LLC v. K Mart Corporation,*
    2017 WL 2775030 (N.D. Cal. June 27, 2017) .............................................24

*Seltzer v. Chesley,*
    512 F.2d 1030 (9th Cir. 1975) ...........................................................9

*Show Management v. Hearst Publishing Company,*
    196 Cal.App.2d 606 (1961) ...............................................................24

*SkinMedica, Inc. v. Histogen Inc.,*
    869 F.Supp.2d 1176 (S.D. Cal. 2012) ....................................................25

*Southland Sod Farms v. Stover Seed Company,*
    108 F.3d 1134 (9th Cir. 1997) ...................................................11, 16, 22

*Sybersound Records, Inc. v. UAV Corporation,*
    517 F.3d 1137 (9th Cir. 2008) ..........................................................22

*Thompson v. United States,*
    604 U.S. 408 (2025)..................................................................5, 13

*Torrey v. Infectious Diseases Society of America,*
    86 F.4th 701 (5th Cir. 2023) ...........................................................14

*Uniloc USA, Inc. v. Microsoft Corporation,*
    632 F.3d 1292 (Fed. Cir. 2011) .......................................................4, 21

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009) .........................................................27

*Victory Global, LLC v. Fresh Bourbon, LLC,*
    170 F.4th 1014 (6th Cir. 2026) ..........................................................6

*Weinstock, Lubin & Company v. Marks*,
42 P. 142 (Cal. 1895)..................................................................................23

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ..........................................................4, 21, 22

**DOCKETED CASES**

*Guardant Health, Inc. v. Tempus AI, Inc*, No. 25-cv-00082 (D. Del.)......................8

**STATUTES**

Cal. Bus. & Prof. Code
§§ 17200 *et seq.* ..................................................................................25
§ 17203 ..............................................................................................25

**OTHER AUTHORITIES**

Bagley, Nicolas, et al., *Scientific Trials–In the Laboratories, Not the
Courts*, 178 JAMA Internal Med. 7 (2018).......................................................15

1 *California Antitrust & Unfair Competition Law* § 19.02 (2025) ........................23

## INTRODUCTION

Guardant stakes its case on a single assertion:  The Reinert Study (which measured Signatera) and the Parikh Study (which measured Reveal) are "not remotely comparable."  *E.g.*, Guardant.Br.1-2; *id.* 25 ("non-comparable"); *id.* 42 ("non-comparable"); *id.* 54 ("***non-comparable***") (emphasis in original).  But Guardant's own conduct shows otherwise.  As Guardant concedes 43 pages into its brief, Guardant itself relied on a detailed, side-by-side comparison of the same two studies to secure Medicare coverage before this case:

## GH CRC MRD Test Meets LCD Requirements

| Performance Parameter | Signatera (Reinert et al) | Guardant (Parikh, et al) |
|---|---|---|
| Landmark sensitivity<br>*Single post-treatment timepoint* | 50%<br>(7/14) | 56%<br>(15/27) |
| Surveillance sensitivity<br>*Collected within ~4mo intervals* | 88%<br>(14/16) | 91%<br>(20/22) |
| Specificity<br>*# ctDNA-/# recurrence free* | 98%<br>(58/59) | 100%<br>(37/37) |
| PPV<br>*# recurred/# ctDNA+* | 93%<br>(14/15) | 100%<br>(20/20) |
| Lead time | 8.7mo | 6.9mo |
| CEA Sensitivity / Specificity | 69% / 64%<br>*(surveillance)* | 35% / 81%<br>*(landmark)* |

GH CRC MRD Test meets the LCD Requirements:
- Identifies recurrence prior to radiographic recurrence
- Sensitivity/Specificity better than CEA
- Performance similar to Signatera

 GUARDANT

11-ER-2767; *see* Guardant.Br.43.  Guardant's Opposition—including its attempts to taint Natera with cherry-picked citations to internal documents—cannot

overcome this fundamental inconsistency or the legal errors in the district court's rulings.

*First,* the district court's "apples-to-oranges" instruction was improper and requires a retrial on all of Guardant's claims. That language improperly led the jury to conclude that Natera's simple, side-by-side comparison of the Reinert and Parikh Studies was necessarily false—no matter the audience or the background context, and despite the fact that Guardant relied on essentially the same comparison. Guardant tries to dismiss the "apples-to-oranges" language as a stray sentence buried at the end of an otherwise legally proper instruction. But by informing the jury that "[a]dvertisements using an 'apples to oranges' comparison *are* literally false by necessary implication …," 1-ER-90, that final sentence of the instruction effectively *answered* the question for the jury—i.e., that if Natera compared two studies with differences, it was false by necessary implication.[1]

Guardant is also wrong that the "apples-to-oranges" sentence was harmless. It was instead front-and-center in Guardant's case: nine times in Guardant's opening statement, 3-ER-413-415, 417, 422, eight times in closing, 9-ER-2224-2226, 2241, 2248, 2250, and repeatedly shoe-horned into witness questioning, *see, e.g.*, 3-ER-514; 3-ER-611; 4-ER-774. As Guardant's lead counsel (wrongly)

---

[1] Emphasis added unless noted.

summarized in closing: "You may be wondering why we've talked about apples-to-oranges comparison so many times[.] … It's actually **one of the elements** of a Lanham Act [claim]; that **if you do this, it is necessarily** a false and misleading statement." 9-ER-2224.

**Second,** the district court's *ONY* instruction improperly allowed Guardant to hide **its** misleading commercial advertising behind a doctrine meant (at most) to protect academic freedom—not commercial advertising. Whatever the scope of *ONY*'s application in cases involving individual scientists or medical journals, it should not apply here, where Guardant intervened in a study to advance its own financial interests (to secure Medicare approval) and then relied on that study in its advertising. Moreover, if this Court were to adopt the *ONY* rule, Natera was entitled to JMOL of no liability because Natera's advertisements indisputably accurately presented the Reinert and Parikh Studies' conclusions without making "misleading statements." *ONY, Inc. v. Cornerstone Therapeutics, Inc.,* 720 F.3d 490, 499 (2d Cir. 2013). Nothing in *ONY* supports Guardant's assertion that an advertisement that accurately summarizes two peer-reviewed studies should receive less protection than an advertisement that summarizes one.

**Third**, the district court's flawed *Daubert* ruling blessed the use of a rule of thumb (here, the so-called "Rule of Seven") to drastically increase a compensatory damages award—from roughly $25 million to $75 million. The Federal Circuit,

-3-

which is experienced with such evidentiary shenanigans, has repeatedly rejected this approach as inconsistent with a "bottom line" of *Daubert* precedent. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316-1317 (Fed. Cir. 2011). Even the case Guardant relies on concludes it is improper to apply a "rule of thumb … without regard to the industry or technology involved." *Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018).

***Fourth***, the district court erroneously instructed the jury it could award punitive damages if it found Natera liable for conduct that violates the Lanham Act. Guardant does not dispute that the Lanham Act does not permit punitive damages and it identifies no authority holding that tacking a common law unfair competition claim on to a Lanham Act suit automatically authorizes treble damages. To the contrary, the California Supreme Court has read California's common law narrowly and limited to where a company passes off a competitor's product as its own or closely related forms of conduct.

## ARGUMENT

### I. THE APPLES-TO-ORANGES INSTRUCTION WAS BOTH ERRONEOUS AND PREJUDICIAL

#### A. The Apples-To-Oranges Instruction Misstated The Law

It is undisputed that Natera's comparison chart accurately reproduced the findings from two peer-reviewed studies, the studies were cited in the advertisement, and the chart was provided to a sophisticated audience of

-4-

oncologists who could easily review the studies and interpret the results. *See* Natera.Br.12-15, 34-36. Yet the district court's improper "apples-to-oranges" instruction wrongly suggested to the jury that—because there were differences between the studies—any comparison was false by necessary implication. Guardant's attempts to rehabilitate the instruction fail.[2]

*First*, citing *Thompson v. United States*, 604 U.S. 408 (2025), Guardant wrongly implies that the Supreme Court has endorsed the false-by-necessary-implication doctrine and suggested there is no meaningful difference between "false" and "misleading" statements. Guardant.Br.29-30. *Thompson* was a criminal false statement prosecution and thus says nothing about the Lanham Act's text and structure. And contrary to Guardant's suggestion (Br.30 n.4) that *Thompson* treated the terms "false" and "misleading" as essentially synonymous, the decision holds that "false and misleading are two different things." 604 U.S. at 413. That principle was crucial to *Thompson*'s holding that a statute's prohibition on "false statement[s]" did not cover statements that were merely "misleading." *Id.* at 413, 418.

---

[2] Guardant argues (Br.40) the court's ruling should be reviewed for abuse of discretion. But where, as here, "instructions are challenged as a misstatement of the law, they are … reviewed de novo." *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929 (9th Cir. 1995), *cited in* Guardant.Br.40.

Moreover, the courts that have adopted the false-by-necessary-implication doctrine have applied it only when an advertisement conveys an unambiguously false message. Natera.Br.24-28. A claim is "'conveyed by necessary implication when … the audience would recognize the claim as readily as if it had been explicitly stated.'" *InSinkErator, LLC v. Joneca Co.*, 163 F.4th 608, 616 (9th Cir. 2025). Interpreting the false-by-necessary-implication doctrine narrowly protects the boundary line between statements that are literally false (e.g., "'bald-faced' or 'over the top' falsehoods") and those that are misleading (where a reader must "engage in some mental processing to determine its truth or falsity"). *See Victory Glob., LLC v. Fresh Bourbon, LLC*, 170 F.4th 1014, 1021 (6th Cir. 2026). That distinction matters because courts presume a literally false claim deceived consumers but require a plaintiff to "present proof of deception" among the relevant audience when challenging a merely misleading statement. *Id.*; *see* Natera.Br.38.

***Second***, Guardant asserts (Br.31) that "[d]ecades of Lanham Act cases" have adopted the district court's "apples-to-oranges" rule. In truth, of the five cases Guardant cites, only one—*Clorox Co. v. Reckitt,* decided by the judge in this case —uses the term "apples to oranges" and was addressed in Natera's opening brief (Br.32-33). Of the remaining four, three (*Groupe*, *Doctor's*, and *Cuisinarts*) involved explicit, unambiguous claims in written text—indeed, the *Groupe* and

*Doctor*'s fact patterns were discussed in both *Reckitt* and Natera's opening brief. Natera.Br.33-34.

That leaves just the Third Circuit's recent unpublished decision in *CareDx*, which Guardant now adopts as its leading case for the "apples-to-oranges" principle. Guardant.Br.31-34. But the *CareDx* Court too held that the advertisements at issue involved unambiguous written claims (e.g., "higher sensitivity and nearly 18% higher [AUC]"). *CareDx, Inc. v. Natera, Inc.*, 2025 WL 2480117, at *6 (3d Cir. Aug. 28, 2025). There was no unadorned, side-by-side comparison of the metrics from two peer-reviewed studies as is the case here. Moreover, the question in *CareDx* was a factual one about whether the evidence supported the jury's verdict—not the legal question here about what the jury should have been instructed. Given these significant differences, it is hardly "remarkabl[e]," Guardant.Br.32, that Natera's opening brief did not cite an unpublished, out-of-circuit decision that does not even use the term "apples-to-oranges." If anything is remarkable, it is that Guardant can find no better case to support its jury instruction.

***Third***, Guardant attempts to rewrite the apples-to-oranges instruction by insisting it applies only to "comparing ***materially*** different things." Guardant.Br.37; *see also id.* 3 ("materially flawed comparisons"); *id.* ("seriously flawed comparisons"); *id.* 25 ("seriously flawed comparisons"). But that limitation

-7-

is not inherent in the term "apples-to-oranges"—which simply refers to "[u]nlike objects," Natera.Br.31—and it appears nowhere in the instruction.

Guardant's post-hoc rewrite highlights why the instruction is so problematic. Whether two objects are non-comparable in any way is an inherently subjective question—just as apples and oranges can reasonably be thought of as comparable pieces of fruit if the viewer is selecting for shape or sweetness rather than color or rind. *Cf.* Natera.Br.32; *see also* Guardant.Br.36 n.6 (acknowledging that "sometimes [it] is possible to compare apples and oranges"). As delivered, the instruction gave the jury free rein to find that any difference between the Reinert and Parikh Studies (or indeed, the mere fact that Natera had compared the studies at all) was sufficient to find literal falsity.[3]

***Fourth,*** Guardant attempts to dismiss the "apples-to-oranges" instruction as simply a "final sentence" in an otherwise legally proper instruction. Br.3, 24-26, 35. But that sentence answered the key factual dispute by telling the jury that, if Natera compared two studies with differences, the resulting advertisement was

---

[3] Guardant, for example, suggested to the jury Natera's advertisements were false because they provided metrics from two studies rather than a single "head-to-head" comparison study. 3-ER-414; 3-ER-417; 4-ER-777; 4-ER-838; 4-ER-873. But as Guardant recently told a federal court in defense of its own advertisements, the Lanham Act does not require a "performance comparison … [to] be supported by a head-to-head study." Opp. 9-11, *Guardant Health, Inc. v. Tempus AI, Inc*, No. 25-cv-00082 (D. Del. Dec. 8, 2025), ECF No. 82.

-8-

false by necessary implication. And "because the jury may be misled," "erroneous instructions are not cured by correct instructions in other portions of the main charge." *Seltzer v. Chesley*, 512 F.2d 1030, 1035 (9th Cir. 1975). Here, while the jury was given (correct) general guidance about the test for the false-by-necessary implication doctrine, it was then given manifestly incorrect guidance about one specific situation where falsity *must* be found—i.e., "Advertisements using an 'apples-to-oranges' comparison *are* literally false by necessary implication where things that are non-comparable are portrayed as otherwise equivalent." 1-ER-90; *see also* 1-ER-6-7 (post-trial order confirming Guardant relied on "an apples-to-oranges *theory* of falsity"). Nothing in the instructions corrected this critical error. *Cf.* Guardant.Br.39 n.7.[4] And if there could be any doubt about the significance of the "apples-to-oranges" instruction to the jury's verdict, it is thoroughly dispelled by Guardant's heavy reliance on the term. *See supra* pp.2-3.

## B. The Instruction Was Prejudicial

Guardant does not deny it has the burden to establish that a legal error in the jury instructions was harmless. *Compare* Natera.Br.34 *with* Guardant.Br.40.

---

[4] Natera is not arguing the instruction wrongly allowed the jury to assess the advertising from the "perspective of teachers [or] firefighters" rather than oncologists. *Contra* Guardant.Br.38. Rather, by instructing the jury it should find falsity if Natera engaged in an "apples-to-oranges" comparison, the jury did not even have to address whether the advertisement was "misleading"—which *would* have required an assessment of whether oncologists would have been deceived. *See* 1-ER-93.

Instead, Guardant repeats its argument that the "apples-to-oranges" instruction was harmless because it was "the 'last sentence'" of a longer instruction and the instructions as a whole "elsewhere" contained a "correct statement of the law." Br.40 (quoting *City of Long Beach*, 46 F.3d at 933-935). But in *City of Long Beach*, the challenged language was merely "ambigu[ous]." 46 F.3d at 935. Here, the "apples-to-orange" language is affirmatively wrong. *See supra* pp.4-5, 7-8. And the sentence's placement at the end of the false-by-necessary-implication instruction heightened the prejudice to Natera, as that location suggested it was a permissible, specific application of the general principles that preceded it. *See supra* p.8.

Guardant next speculates that "a reasonable jury would have reached the same verdict" even without the apples-to-oranges instruction. Br.26, 40-42. But Guardant (Br.41) presents hotly disputed testimony as settled fact when it argues that the "difference in input volumes" between the Reinert and Parikh Studies (*e.g.*, 8ml v. 4ml) meant that the tests were necessarily too dissimilar to compare. In reality, Natera's expert testified that "you can't just look at differences in plasma volume to conclude that the studies are not comparable"—the tests measured the amount of "cell-free DNA" and "***the amounts of cell-free DNA used in both studies were comparable***." *E.g.*, 8-ER-1948; *see also* 8-ER-1896-1898 (similar); 8-ER-1945 (similar). Guardant's own internal emails

-10-

suggested that the quality of samples mattered more than their quantity, and Guardant employees confirmed that they would process Reveal samples even at lower volumes so long as certain quality metrics were met. Natera.Br.36-37. Guardant expressed no hesitation when informed by one of the Parikh Study's co-authors that the study "likely will not have 10mL of plasma" samples—rather, the Guardant employee replied to say "*great* 4-5mL will work." 10-ER-2417-2418; *see also* 11-ER-2748-2749 (email exchange).[5]

Guardant also suggests the apples-to-oranges instruction was harmless because "misdescriptions of specific or absolute characteristics of a product are actionable." Guardant.Br.42 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)). The jury was not instructed on this theory of falsity. *See* 1-ER-90-92. Regardless, the *Southland Sod* rule is not applicable

---

[5] Guardant (Br.11-12) suggests two individuals associated with Natera "*knew* the comparison" between the Reinert and Parikh Studies "was false." But as Natera explained (Br.37 n.7), Dr. Andersen was not addressing the Reinert-Parikh comparison. And much like Guardant's own internal emails, Dr. Andersen acknowledged that quality matters more than quantity. Even a "one milliliter" sample could be enough if "what you are looking for is in the blood" and you have an effective test to "look[] for it." 10-ER-2391-2392. Dr. Masukawa stated that a comparison between Reinert and Parikh might not be "apples-to-apples" merely because the results did not come from a single study. 4-ER-787; *see* 4-ER872-874 (Dr. Masukawa agreeing that Reinert-Parikh comparison was "as close to apples-to-apples as one can get"); Natera.Br.37 n.7.

-11-

because Guardant has not identified any specific "misdescription" of Signatera or Reveal.[6]

Ultimately, even Guardant did not believe the Parikh and Reinert Studies were incomparable—because of the sample-size issue or otherwise—since Guardant both controlled the direction of the Parikh Study and later relied on a near-identical comparison between the studies when seeking Medicare coverage. Natera.Br. 9-12; *supra* p.1; *see* 3-ER-600-601 (Guardant employee conceding the MolDX slide made a "side-by-side comparison" and "didn't say anything about sample volumes"). Guardant tries to distinguish its reliance on that particular comparison on the theory that Medicare reviewers would be more sophisticated than a "commercial" audience, Guardant.Br.43, but the audience for Natera's advertisements were doctors who *specialize* in cancer treatments. Regardless, whether an advertisement might have been deceptive to a particular audience goes to the question of whether the advertisement is misleading—not literal falsity. *See* 1-ER-93.

***

---

[6] While Guardant leans on a statement in the post-trial order that a reasonable jury could have found "specific" differences between the two studies that rendered the comparison false, *see* Guardant.Br.42 (citing 1-ER-6), Natera has already explained that the ruling (wrongly) assumed the apples-to-oranges test was legally correct and thus was applying the JMOL standard rather than the harmless error test. Natera.Br.36. Guardant has no answer.

Guardant's attempts to dismiss the importance of the "apples-to-oranges" language to the instruction and the ultimate trial outcome fail. Because the law requires courts to use precision when it comes to defining falsity rather than relying on what a term might mean as a matter of "casual conversation," *cf. Thompson*, 604 U.S. at 410, 418, a new trial is warranted.

## II. THE DISTRICT COURT ERRED IN APPLYING THE SECOND CIRCUIT'S *ONY* RULE

### A. This Court Should Not Adopt The *ONY* Rule

It is undisputed that Guardant both manipulated the Parikh Study in order to secure Medicare funding and then relied on that same study to support its commercial advertisements. *See* Natera.Br.9-13, 40-41. Yet the district court erroneously interpreted the Second Circuit's *ONY* decision to shield Guardant's commercial advertisements because they relied on that manipulated study. Natera.Br.40-45. The court should have applied (and this Court should apply) the Fifth Circuit's approach, which holds that "[i]n th[e] commercial context, the First Amendment is no obstacle to enforcement of the Lanham Act." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014); *see* Natera.Br.43.

*First*, Guardant devotes nearly five pages to rebutting a strawman—*i.e.*, that the Lanham Act permits a company to bring suit directly against scientists or a peer-reviewed journal. Guardant.Br.44-49. That was not Natera's argument, as this litigation involves two competitors. Accordingly, Guardant's cases that

-13-

involve scientists, medical journals, or a "School of Magnetic Healing" are inapposite. *See Pacira Biosciences, Inc. v. American Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 243 (3d Cir. 2023) ("editor-in-chief of [a] medical journal[] and the authors of three articles"); *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 702-703 (5th Cir. 2023) ("seven doctors" who authored guidelines on Lyme disease published in a medical journal); *HipSaver Inc. v. Kiel*, 984 N.E.2d 755, 759 (Mass. 2013) ("publication of an article in the Journal of the American Medical Association"); *see also American Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902).

**Second**, Guardant wrongly argues (Br.50) that *Eastman* is both generally consistent with *ONY* and has force only when a corporate defendant "made claims **unsupported** by the [scientific] article." In reality, *Eastman* distinguished *ONY* at length on the grounds that it involved a suit "to enjoin statements made within the academic literature and directed at the scientific community." 775 F.3d at 236. Put simply, "[t]he First Amendment ensures a robust discourse in the pages of academic journals, but it does not immunize false or misleading **commercial** claims." *Id.* at 237. Guardant's own authority supports this reading of *Eastman* and *ONY*. *See CareDx, Inc. v. Natera, Inc.*, 2019 WL 7037799, at *9 (D.Del. Dec. 20, 2019) (citing *Eastman* and noting that "unlike in *ONY*, CareDX does not

-14-

challenge statements made in Natera's Study Publication" but instead "challenges statements made in Natera's press releases").[7]

The one- and two-word snippets from *Eastman* that Guardant quotes (Br.50) come from a later section of the opinion that distinguished *ONY*'s holding regarding a tortious interference claim. *Eastman*, 775 F.3d at 237. Even that section does not meaningfully help Guardant, as *Eastman*'s primary reasoning was that an out-of-circuit ruling on a tortious interference claim was neither binding nor had any bearing on the scope of the Lanham Act. *Id.* In any event, this Court can simply adopt *Eastman*'s commercial/academic distinction without accepting every facet of the Fifth Circuit's opinion.

**Third**, Guardant argues (Br.49) that the commercial/academic distinction should be rejected on the policy ground that suits challenging a company's use of peer-reviewed work will indirectly discourage scientific research. But Guardant is unable to identify a single authority to support this proposition, which—as *Eastman* explains—would unjustifiably immunize large swathes of commercial conduct. *See* 775 F.3d at 236. Even the one-page "[o]pinion" piece Guardant cites dealt only with "meritless" "lawsuits [that] target scientists" directly, Bagley et al.,

---

[7] Guardant (Br.45) chides Natera taking a different position on *ONY* in *CareDx*. But Natera learned from the District of Delaware's six-year-old decision— Guardant apparently has not.

*Scientific Trials In the Laboratories, Not the Courts*, 178 JAMA Internal. Med. 7, Jan. (2018), and not (as Guardant implies, Br.49) suits where a scientist is "not named as a defendant."

**Fourth**, Guardant claims (Br.51) that the *ONY* rule is "consistent" with this Court's ruling in *Southland Sod*, 108 F.3d at 1139, that a Lanham Act plaintiff can "attack[] the validity of the defendant's tests directly" when arguing that an advertisement was not based on a "sufficiently reliable" test. But the two approaches are incompatible. *Southland Sod* always permits a party to challenge the reliability of a defendant's test as part of a false advertising case, but *ONY* prohibits such a challenge if the test is drawn from a peer-reviewed study. While *Southland Sod* (unlike here) involved "non-peer-reviewed product testing," *see* Guardant.Br.51, nothing in *Southland Sod* turned on the absence of peer review.[8]

**Finally**, Guardant suggests (Br.47-48, 51) that scientific conclusions—even when included in commercial advertising—cannot be challenged under the Lanham Act because they are the equivalent of opinions rather than "specific and

---

[8] Guardant (Br.51) also asks this Court to interpret *Southland Sod*'s scope based on a footnote from the Third Circuit's *Pacira* decision. But that case expressly recognized that "[l]iability under the Lanham Act" may in fact "be established by showing that 'the underlying studies upon which the representations are based are not sufficiently reliable[.]'" *Pacira*, 63 F.4th at 248 n.17. The portion of the footnote Guardant relies on was addressing the "***different***" "inquiry" that applies when analyzing a claim for trade libel under New Jersey law. *Id.*

measurable claim[s]" that can be proven false. But the only appellate case Guardant identifies that has taken this narrow view is *ONY* itself, which should not control here for the reasons discussed above.

The Guardant advertisements targeted by Natera's counterclaims illustrate precisely why the *ONY* fact/opinion line makes little sense. Each advertisement included unequivocal misstatements—*e.g.*, that Reveal had "100% specificity" and "91% sensitivity." Natera.Br.11, 13; *see also, e.g.*, 11-ER-2690, 11-ER-2781 (advertisements). These are "'specific and measurable claim[s]'" that are "'capable of being proved false'" and/or "'reasonably interpreted as a statement of objective fact[.]'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Nothing in Guardant's advertisements suggested these statements were merely "working theories" that were "tentative and subject to revision." *Contra* Guardant.Br.47.

### B.     A New Trial Is Required On Natera's Counterclaims

Guardant does not dispute that, if Natera is right on the law, it is entitled to a new trial on the "inflated … metrics" claim. *Cf.* Guardant.Br.53. But Guardant says (Br.53-54) Natera should not receive a new trial on the remaining counterclaims because Natera "chose" to try to prove its case under the (more demanding) *ONY* standard. Natera had no choice at all: Under the court's summary judgment ruling, it could either attempt to prove up a fraud theory or

abandon its counterclaims entirely. *See* 13-ER-3069-3077. In any event, when (1) a district court informs the jury of only one theory of liability (here, that the Parikh Study was fraudulent) but (2) the jury could have also permissibly found liability under another theory (here, that the Parikh Study was not sufficiently reliable), this Court is "requir[ed] to find prejudice." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1245 (9th Cir. 2021).[9]

### C. If The Court Adopts *ONY*, It Should Also Apply To Natera's Advertisements

At minimum, the district court erred by applying its expansive view of the *ONY* doctrine to hold that the First Amendment shields Guardant but not Natera. Natera.Br.46-47.

Guardant chiefly contends (Br.54) that Natera's advertisements are actionable because Natera made an implicit claim that did not appear in the Parikh or Reinert Studies themselves (*i.e.*, that the two studies are comparable in some way). Nothing in *ONY* itself draws a distinction between an advertisement that accurately summarizes one study and another that accurately summarizes two.

Regardless, Guardant cannot have it both ways. If statements made in peer-reviewed studies are always "'tentative'" opinions that are "'subject to revision,'"

---

[9] Contrary to Guardant's passing assertion (Br.53), Natera's counterclaims pleaded that the Parikh Study was unreliable. *E.g.* 13-ER-3145; *see* 13-ER-3134; 13-ER-3132.

Guardant.Br.47, then an advertisement like Natera's that puts the results of two studies side-by-side cannot be literally false because it is at best stating an implicit opinion—a "working theor[y]" that could be changed at a future point based on further studies, *cf. id.* In that case, the *ONY* rule should have protected Natera, and Natera should be granted JMOL of no liability.

If, instead, Guardant is correct that comparing the results of the Parikh and Reinert Studies conveyed a factual assertion about relative performance, the underlying study metrics (*e.g.*, prospectiveness, blindness) are likewise factual representations that can be disproven. And in that case, *ONY* should not have been interpreted to insulate Guardant from Natera's claims.

## III. THE DISTRICT COURT ERRED IN PERMITTING GUARDANT'S EXPERT TO APPLY A 3X MULTIPLIER WHEN ASSESSING COMPENSATORY DAMAGES

The district court abdicated its *Daubert* responsibility by allowing Mr. Malackowski to use a rule of thumb (here, the so-called "Rule of Seven") to radically increase a compensatory damages award from roughly $25 million to $75 million. Natera.Br.47-54. Permitting this testimony was error for two independent reasons: (1) the court failed adequately to address why Malackowski's opinion was supposedly reliable and (2) Malackowski's opinion was in fact fundamentally unreliable. *Id.*

As to the first point, Guardant does not seriously dispute that the court failed to evaluate whether Guardant met its burden to prove Malackowksi was reliable.

Guardant's only response (Br.27, 55, 58) is to point to the same three words in the court's opinion that Natera already spotlighted—*i.e.*, the conclusory statement that Malackowski's opinion was "rational and supported," 13-ER-3087; *see* Natera.Br. 51. This Court has long required more. Even "'two conclusory ***sentences***'" is insufficient when, as here, the district court fails to provide the requisite "'analysis or explanation.'" *See City of Pomona v. SQM North Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017).

The court's analysis was thin for a reason: Malackowski's opinion was fundamentally unreliable. Guardant does not dispute that most of what Malackowski relied upon in developing his opinion has no connection to the facts of this case. Guardant primarily points to Malackowski's reliance on (1) a snippet of deposition testimony from Guardant's CEO, (2) a single, informal email from Natera's CEO, and (3) the fact that Natera spent much more than it originally intended in responding to Guardant. *See* 13-ER-3125; 13-ER-3087; Guardant.Br.56-57. But Natera's opening brief explained why neither CEO's statement reliably supported the 3X multiplier theory and noted that the increase in Natera's marketing budget was already fully accounted for in Malackowski's base compensatory damages. Natera.Br.50-51 & n.10. Guardant has no answer to any of these points. To the contrary, it concedes Guardant's CEO's testimony is insufficient to justify Malackowski's opinion. Guardant.Br.57.

-20-

Guardant's attempts (Br.57-58) to distinguish *Uniloc* fail. *Uniloc* rejected an expert witness's damages testimony that (1) started with the premise that, as a general matter, a patentee is entitled to "25% of the value" of a patent-practicing product and then (2) "adjust[ed]" the damages estimate "based on legitimate considerations specific to the facts of the case." 632 F.3d at 1311, 1317. Malackowski's 3X multiplier opinion applied the same basic formula by (1) starting with the so-called "Rule of Seven"—*i.e.*, the notion that it can take up to seven times for any advertisement to have an effect—and (2) adjusting downwards to a 3X multiplier in order to purportedly align with, *inter alia*, the email from Natera's CEO. 13-ER-3125-3126.

While Guardant implies (Br.58) that this Court has diverged from *Uniloc*'s sound reasoning, the lone case it cites is nothing like this one. *Williams v. Gaye* dealt with an expert who testified that the music "industry standard" for a copyright license was 50% in a narrow context—when a "new musical composition" uses the "music" but not the "lyrics" from an older composition. 895 F.3d at 1128. Applying "great deference" (*i.e.*, not the *Daubert* standard), the *Williams* Court held the $3.1 million damages verdict could stand because the 50% measure was rooted in that specific "industry standard." *Id.* at 1128-1129. This Court suggested, however, that it might have reached a different result even under substantial evidence review if the expert had applied a "rule of thumb … without

regard to the industry or technology involved." *Id.* at 1129. And that is precisely what Malackowski did—he applied a free-floating "Rule of Seven" principle that he drew from, *inter alia*, a blog for car dealers called "Kruse Control" and a Florida district court decision involving the shipping industry. 13-ER-3126-3127; *see also* Natera.Br.49.

## IV. THE DISTRICT COURT ERRED IN ALLOWING PUNITIVE DAMAGES

### A. The Court Erred By Allowing Punitive Damages To Go To The Jury

#### 1. California Common Law Does Not Create a Loophole to the Lanham Act's Prohibition on Punitive Damages

The district court erred by permitting the jury to award punitive damages. Natera.Br.54-57. Guardant does not dispute that punitive damages are unavailable under the Lanham Act. While such damages are sometimes available for a violation of California law, the California common law tort of unfair competition is generally limited to a scenario not at issue here—when the defendant passes off a competitor's work as its own. *See, e.g.*, *Bank of the West v. Superior Ct.*, 833 P.2d 545, 551 (Cal. 1992); *Southland Sod*, 108 F.3d at 1147; *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008).

*First*, Guardant (Br.60-62) relies on a treatise and a half-dozen (largely antiquated) state-court cases to suggest that California's common law unfair competition tort covers more than "passing off" claims. But even Guardant's

-22-

treatise states the correct rule: "At its core, 'the common law tort of unfair competition consists of "passing off" or analogous acts and is rooted in preventing conduct that harms competitors by deceiving customers.'" 1 *California Antitrust & Unfair Competition Law* § 19.02 (2025). And the very first decision Guardant cites was describing ***a passing-off claim***. *See Weinstock, Lubin & Co. v. Marks*, 42 P. 142, 145 (Cal. 1895) ("The fundamental principle underlying this entire branch of the law is that no man has the right to sell his goods as the goods of a rival trader.").[10] The scope of California's protection against unfair competition was subsequently expanded "not so much through the common law as through the enactment of statutes." *See Bank of the West*, 833 P.2d at 551.

Even if one or two Court of Appeal cases extended the tort slightly beyond orthodox "passing off" claims, such intermediate decisions cannot override the California Supreme Court. Moreover, the exceptions Guardant cites are nothing like the conduct at issue in this case. For example, *Ojala v. Bohlin*, 178 Cal.App.2d 292 (1960), involved a claim that a competitor had stolen the plaintiff's designs and built a very similar looking, competing gun holster, *id.* at 299-301. The only reason the claim did not squarely fall under the passing off

---

[10] Guardant (Br.60) relies on a snippet from later in *Weinstock* (*i.e.*, that the tort applies to "all cases where fraud is practiced by one in securing the trade of a rival dealer"), but omits that this language is summarizing the reach of the "***foregoing principles of law***"—*i.e.*, the scope of the passing-off doctrine. *See* 42 P. at 146.

-23-

doctrine was that the defendant had "stamped [his name] on the bottom of each …

holster[.]" *Id.*; *see also Show Mgmt. v. Hearst Publ'g Co.*, 196 Cal.App.2d 606,

616 (1961) (concluding plaintiff had failed to state a false-advertising claim, but

citing *Ojala* as example of unfair competition tort's scope). And while Guardant

claims courts have read the tort of unfair competition law to cover "trade libel," the

case it cites for this point simply states that "unfair competition" and "trade libel"

"are theoretically related." *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal.App.3d 377,

381 (1986). Worse, the case Guardant relies upon for its separate assertion (Br.61)

that trade libel and the Lanham Act are "essentially coterminous" stands for

exactly the opposite proposition. *See Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*,

838 F.2d 346, 351 (9th Cir. 1988) (noting that insurance policy would apply if

plaintiff raised certain libel-related legal claims—including "trade libel"—but

holding that plaintiff's "unfair competition" Lanham Act claim "ha[d] no arguable

relation to any" of those species of libel claims). Ultimately, because "the

boundaries of 'unfair competition' claims are not unlimited," they cannot be

stretched to cover the conduct alleged here. *See Rise Basketball Skill Dev. LLC v.

K Mart Corp.*, 2017 WL 2775030, at *3 (N.D.Cal. June 27, 2017).

**Second**, Guardant (Br.61) falls back on one sentence apiece from *Cleary v.

News Corp.*, 30 F.3d 1255, 1262-1263 (9th Cir. 1994) and two of its unpublished

progeny, which Guardant claims reflect this Court's "long 'held'" view of the

-24-

scope of California common law.  But an independent review shows that the "Ninth Circuit, federal district courts, and California courts consistently have held that the tort of unfair competition requires a showing of 'passing off' or similar conduct."  *Bakemark USA, LLC, v. Navarro*, 2023 WL 3317001, at *3 (C.D.Cal. Apr. 28, 2023); *see also, e.g.*, *SkinMedica, Inc. v. Histogen Inc.*, 869 F.Supp.2d 1176, 1187-1188 (S.D.Cal. 2012); *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D.Cal. 2012); *Dyson, Inc. v. Garry Vacuum, LLC*, 2010 WL 11595882, at *9-10 (C.D.Cal. July 19, 2010).

Tellingly, *Cleary* did not cite any of the state-law cases Guardant relies upon or, indeed, any case that treats the **common law** as "substantially congruent" to the Lanham Act's false advertising provisions.  Instead, *Cleary* relied on two federal decisions addressing the scope of California's **statutory** unfair competition law. *See Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (discussing California Business and Professions Code §§ 17200 *et seq.*); *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F.Supp.1346, 1362 (C.D.Cal. 1984) (discussing Section 17203).  Moreover, *Cleary* undisputedly involved a passing-off claim and thus had no occasion to test the outer limits of the doctrine.

***Third***, Guardant suggests (Br.61-62) that *Bank of the West* offered only dicta when it stated that the common law tort "is generally thought to be synonymous

-25-

with the act of 'passing off.'" 833 P.2d at 551. Dicta or not, "[t]he courts of a state alone can define the authoritative meaning of state law." *See Andrade v. City of Phx.*, 692 F.2d 557, 559 (9th Cir. 1982) (per curiam). Guardant cites nothing that would permit this Court to depart from guidance set out by the California Supreme Court.

Regardless, *Bank of the West*'s statement was not dicta because it was necessary for the Court to define the common law doctrine's metes and bounds to resolve the question before it—interpreting the phrase "unfair competition" in an insurance contract. 833 P.2d at 550-553. And while Guardant contends (Br.62) that *Bank of the West*'s holding is not "categorical" because the decision uses the word "generally" in describing the tort's scope, the word "generally" refers to the possibility that "the tort [of unfair competition] also includes acts ***analogous*** to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." 833 P.2d at 551.

***Finally***, Guardant (Br.62) asks this Court to ignore both *Bank of the West* and this Court's precedential decisions in *Sybersound* and *Southland Sod* based on a few words from *Los Defensores, Inc. v. Gomez*, 223 Cal.App.4th 377 (2014), a decision Guardant claims shows unfair competition extends beyond "passing off" claims. But again, Guardant's description of the case omits context. The full passage Guardant points to explains: "Although ***the term*** 'unfair competition'

-26-

applies to several types of misconduct, [citation to *Balboa Insurance Co. v. Trans Global Equities*, 218 Cal.App.3d 1327 (1990)], the **tort** of unfair competition pertinent here is 'the act of "passing off" one's goods as those of another.'" *Id.* at 393.[11]  Thus, far from endorsing Guardant's position, *Los Defensores* stands for the same basic proposition as *Bank of the West*.

### 2. The Court Did Not Abuse Its Discretion by Declining to Invoke Judicial Estoppel

Guardant (Br.64-66) asks this Court to review the record *de novo* and hold in the first instance that Natera was judicially estopped from challenging Guardant's flawed jury instructions.  But "the district court's decision not to invoke judicial estoppel" is reviewed only "for an abuse of discretion." *Enquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1000 (9th Cir. 2007).  And Guardant provides no reason why the court's ruling—issued by a judge who had firsthand knowledge of the parties' positions and their effect on his rulings—is "illogical, implausible, or without support in inferences … in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

The ruling was correct regardless of the standard of review applied for two related reasons.  **First**, the purpose of judicial estoppel is to "'prevent[] a party from **prevailing** in one phase of a case on an argument and then relying on a

---

[11] *Balboa*, in turn, describes the general state of "unfair competition law"—including, for example, contract law theories.  218 Cal.App.3d at 1341-1342.

contradictory argument to prevail in another phase.'" *Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012).  While Guardant claims (Br.59, 65) that Natera "persuaded the district court ***not to dismiss*** [Natera's] own 'common law unfair competition' counterclaims," Guardant's motion was ***premised*** on the notion that the Lanham Act and Natera's state law claims were governed by the same legal standards.  *See* FER-12-13 (Guardant's motion arguing "[t]he state-law claims are 'substantially congruent' with the federal claims and should likewise be dismissed"); *see also* 1-SER-81 n.12 (Natera opposition noting Guardant never "separately argue[d] for dismissal of Natera's" state-law claims).  Because Guardant did not advance a separate argument for why Natera's common law claim should be dismissed, the only way for Guardant to win was to persuade the court that the common law and Lanham Act claims were subject to the same standard.  Accordingly, it was Guardant who prevailed on this issue by convincing the district court that Natera's "common law unfair competition claims are 'substantially congruent' to claims made under the Lanham Act."  1-SER-75.

*Second*, Guardant has not shown Natera gained an "unfair advantage" by referencing the "substantially congruent" standard in passing.  An unfair advantage arises when a party "successfully discredit[s]" the other side's position.  *See Perez v. Discover Bank*, 74 F.4th 1003, 1009 (9th Cir. 2023).  Here, Natera did not

"discredit" Guardant's position because Guardant itself repeatedly argued that the common law was "substantially congruent" to the Lanham Act—including in Guardant's motion to dismiss briefing. *See, e.g.*, 1-SER-40 n.2; FER-5-7; FER-11-13; FER-16 n.6. Guardant cannot reasonably claim to be prejudiced by the district court adopting a position Guardant urged it to take.[12]

## B. The $175.5 Million Award Cannot Stand

### 1. No Reasonable Jury Could Have Found the Kind of "Despicable" Behavior Required at the Threshold

Perhaps recognizing its own comparisons of the Parikh and Reinert studies in front of MolDx make the "fraud" theory it advanced at trial untenable, *see* Natera.Br.59, Guardant now relies (Br.67-68) almost entirely on a "malice" theory it did not attempt to present to the jury. But no reasonable jury could have found, for example, that Natera's grid accurately reproducing the results of Guardant's Parikh Study and the Reinert Study was an effort to "impugn" Guardant's "integrity." *Contra* Guardant.Br.68. Rather, the evidence shows Natera at worst "made a series of poor decisions," *In re First All. Mortg. Co.*, 471 F.3d 977, 999

---

[12] Guardant also misleads (Br.65) when it states that Natera "admits" the flaws in Guardant's instruction were raised late in the jury instruction process. Natera was merely quoting the district court's (erroneous) statement. In reality, Natera raised the issue in April 2024, seven months before trial. FER-20-21. And while Guardant complains (Br.66) it was denied the opportunity to add Texas-state-law claims to its complaint, it apparently never sought leave to amend. *See* 13-ER-3025.

(9th Cir. 2006), in how it handled the emotionally charged rollout of a marketing campaign Natera believed was accurate, fair, and necessary to correct the misleading impression left by Guardant's manipulated Parikh Study, *see* Natera.Br.9-13, 59-60.

### 2. The $175.5 Million Award Violates Due Process

At minimum, the punitive damages award's size violates due process. Natera.Br.60-62. ***First***, Guardant argues (Br.71-72) this Court should analogize the damages award to the civil penalties awarded under "California ***statutes***" for false advertising. But California's statutory law is different and far more expansive than California's common law. *E.g.*, *supra* pp.23-25. The better analogy is *Leatherman Tool Group, Inc. v. Cooper Industries, Inc.*, 285 F.3d 1146, 1150, 1152 (9th Cir. 2002), which concluded $500,000 was the maximum for a "passing off" claim under Oregon law.

***Second***, Guardant suggests (Br.70-71) that more than a 1:1 compensatory-to-punitives ratio is appropriate in this $175.5 million punitive damages case simply because this Court has approved higher ratios in cases with much lower compensatory awards ($8 million in *Ramirez*, $5.2 million in *Hardeman*, and $2.7 million in *Hangarter*). But *State Farm*'s guidance that a 1:1 ratio may be the maximum appropriate in cases where "compensatory damages are substantial" carries the most weight in the context of an exceedingly high damages award like

in this case, which Guardant's attorneys have bragged is "one of the largest Lanham Act … verdicts in history." *See* Natera.Br.1, 62.

***Finally***, Guardant contends Natera's conduct was "reprehensible," but ignores Natera's page-long explanation rebutting this assertion because the conduct involved only commercial competition and a good faith scientific disagreement—presumably because it has no persuasive answer. *Compare* Natera.Br.60-61 *with* Guardant.Br.69-70. Regardless, Guardant's argument turns on its assertion that a side-by-side comparison of the two studies was so misleading that it can only have been intended to "deceive" doctors and harm cancer patients. Guardant.Br.70. But that argument cannot be squared with the fact that Guardant made the same type of comparison between the studies in order to secure Medicare coverage. *See supra* p.1.

## CONCLUSION

The judgment should be reversed and remanded.

Respectfully submitted,

/s/ *Seth P. Waxman*

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real Suite 400
Palo Alto, CA 94306
(650) 858-6000

SETH P. WAXMAN
JOHN HE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington DC, 20037
(202) 663-6000

MICHAEL J. SUMMERSGILL
ADELA LILOLLARI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

May 11, 2026

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | No. 25-5503

I am the attorney or self-represented party.

**This brief contains** | 6,984 | **words,** including | 88 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Seth P. Waxman | **Date** | 5/11/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*